## BOY STRUCK BY A TRAIN.

Circuit Court of Richland County.

JOSEPH S. CARTER, ADMINISTRATOR, v. ERIE RAILROAD COMPANY.*

Decided, January, 1911.

*Negligence—Uninclosed Railway Grounds Used by Pedestrians—Boys Loitering on Such Grounds and One Darts in Front of a Train— Company Held Not Liable.*

A locomotive engineer while fulfilling his duty of keeping a lookout on the track in front of his train, is not charged with the responsibility of watching the open railway grounds and right-of-way in the belief that persons on such grounds or right-of-way will attempt to cross the track in front of his train, and the company is not liable for striking a boy who did attempt to cross the track almost immediately in front of a train.

*Farber & McCray*, for plaintiff in error.
*Cummings, McBride & Wolfe*, contra.

By THE COURT (TAGGART, J., VOORHEES, J. and POWELL, J.)

The plaintiff, as administrator of the estate of Clarence A. Carter, deceased, grounded his action in the court of common pleas upon the alleged negligence of the defendant, the Erie Railroad Company.

It was his claim that the deceased, Clarence A. Carter, came to his death in consequence of the negligence of the defendant company's servants in failing to warn the deceased when in the immediate proximity of one of the company's trains in passing over its line of road close to Springmill street crossing in the city of Mansfield.

* Affirming *Carter, Admr.*, v. *Erie Railroad Co.*, 10 N.P.(N.S.), 292.

The deceased was a boy between eleven and twelve years old, who with a companion had gone to the Baltimore & Ohio Railroad depot about four o'clock on the afternoon of the 24th of November, 1906. While at the Baltimore & Ohio Depot these two boys were required to go from the depot and grounds and they passed across Springmill street to unenclosed lands belonging to the Erie Railroad Company and the Baltimore & Ohio Railroad Company. These unenclosed lands lie between Springmill street and North Main street, in the city of Mansfield.

It is claimed in the petition that these unenclosed lands have for many years been opened and used by the public as a way for passage between the Baltimore & Ohio depot and the said Main street, and points eastward thereof; that the defendant company had permitted the public to so use these unenclosed grounds, and that the same were highly dangerous and known to be such by the defendant company, and that while these two boys were upon these unenclosed grounds the defendant company so wrongfully and carelessly operated its train and wholly failed to ring its bell or sound its whistle on the engine of the train, or give any other adequate warning so that the deceased might have been aware of its presence and its approach and escape being run down by said train.

It is further claimed that the servants of the company failed to keep a lookout so as to watch its track in front of its trains, and in consequence of the alleged negligent, careless and wrongful acts of the defendant, the plaintiff's intestate was killed. The answer is a general denial and averment of the contributory negligence on the part of the deceased at the time of the injury.

The defendant, at the close of plaintiff's testimony, moved the court to direct a verdict for the defendant, which motion the court at the time overruled but submitted the case to the jury under his instructions. The jury returned a general verdict and returned special findings which were objected to and excepted to by the defendant. Thereupon the defendant filed its motion for a new trial, which was afterwards sustained and a new trial was granted. And the defendant further insisted upon the court passing upon the motion so made at the close of all the evidence, which the court sustained and entered a judgment against the

plaintiff for costs. Plaintiff thereupon filed a motion for a new trial which was overruled, and bill of exceptions was taken and he now seeks the reversal of the judgment of the court of common pleas.

The plaintiff in error insists that the deceased being a boy of but ten years of age, and being upon unenclosed grounds of the defendant, was entitled to more consideration than had he been an adult, and that the proof in this case indicates that the grounds of defendant company were used by the public in such a way that these two boys were not trespassers but were licensees, and that the company owed them some duty by exercising care in approaching the Springmill crossing; such care in fact, that they should run their trains and keep a lookout that children of tender age or persons upon the grounds should not be run down and injured and killed as was the deceased in this case.

The record in this case discloses that these boys did not go to the Baltimore & Ohio for any purpose connected with the business of the railroad; the only excuse they give for being in that vicinity was that they went to meet the incoming car which would cross the Baltimore & Ohio tracks at the Baltimore & Ohio depot, for the purpose of getting papers that would come from Cleveland. But, it appears from the record that this was not the usual or customary manner of securing these papers, or that this errand would necessarily lead them to pass over the unenclosed grounds of the Erie company. After failing to get their papers, the record discloses that they passed across Springmill street and entered upon the unenclosed grounds of the defendant. It does not show that they ever attempted to pass down the known track or way that it is claimed pedestrians took when passing from the Baltimore & Ohio depot eastward to Main street.

Upon the contrary the record seems to disclose that they were on the north side of the Erie tracks with no well defined purpose or object, either loitering or playing there or amusing themselves as they saw fit.

It does appear affirmatively that they knew of the approach of the defendant company's train from the east, it having passed the Erie station and was westward bound. We learn from the survivor of these boys that it was in contemplation that they

cross the track in a southwardly direction to reach the Baltimore & Ohio depot; whether this was in the mind of the deceased we can only assume from his conduct.

We have a comparatively clear description of what was done by him after the two boys started from the north side of the Erie track in a southwest direction, an eye witness saw them start, describes their course and what they did. And the survivor of them gives us some information as to what the deceased did and the direction that he took.

It appears that he started in a southwesterly direction and ran parallel with the company's track westerly to near what is known as the "gateman's tower," when he started across the Erie track almost immediately in front of the engine that caused his death.

With this state of facts and the engineer having given all the usual and required signals, it is contended that the record shows that the engineer, he being on the north side of the engine, should have kept a lookout and should have given such warnings as would have attracted the attention of the deceased.

But we do not think that this record justifies such a conclusion. As we have said, the deceased, even if he were upon these grounds as a licensee, which is as much as could be claimed for him and perhaps more than he is entitled to be considered in this case, the company would only be liable when its servants saw him on the track, or when by the use of ordinary care they should have seen him. If by the exercise of ordinary care they saw him, if he was on the track or they should have seen him, and that could have prevented his injury, then they were required to do so.

But, we can not, as we view this record, hold that he was a licensee, but, on the contrary, as we view the record, we think he was a trespasser, and if he was a trespasser on these grounds, then the company owed him no duty to sound any whistle or ring any bells except that they were not to be permitted to wantonly run him down. As to the duty of the engineer to keep a lookout, we think the case of *Railroad* v. *Kisler*, 66 O. S., 326, lays down the duty of an engineer in respect to a lookout:

"It is the duty of a locomotive engineer to keep a lookout on the track ahead of the train. If while so doing his eye takes in a person approaching the track he may assume that such person

will keep away from the track until the train passes; but when it becomes evident that such person will not keep off the track, it becomes the duty of such engineer to use ordinary care to prevent injury to such person, his first and highest duty, however, being for the safety of the passengers and property in his charge for transportation.''

In this case we conceive it to be the duty of the engineer to keep a lookout for Springmill crossing rather than for trespassers upon the right-of-way who might be approaching the track or attempting to cross, and this would be the case whether the boys were upon the unenclosed ground as licensees or as trespassers.

It can not be insisted, we think, that it was the duty, through these grounds, for the engineer to be compelled or required to keep a lookout for the track ahead of the train and at the same time keep a lookout for persons on the right-of-way, all the time assuming that the same would attempt to cross the track. But, if the deceased and his companion were mere trespassers and the engineer was in the use of ordinary care in managing his train, and this record discloses that these boys traversed part of the unenclosed grounds and ran alongside of the track and gave no indication of their purpose to cross the track, until the deceased attempted to cross the track almost immediately in front of the engine, and hearing the warning cry of the witness Carr and that of his surviving companion turn and attempt to go back and was struck, we see no basis or foundation for any recovery in this case, for there can be no basis upon which any negligence can be imputed to the railroad company or to its servants in the operation of its trains.

We think the case of *Railroad Company* v. *Harvey,* 77 O. S., 235, and the cases there collated by Summers, Judge, in deciding that case, is absolutely controlling in this case, and we see no grounds upon which any recovery could be had under the averments of the petition or under the proof as made in this case.

Therefore we are clearly of the opinion that the court was right in sustaining the motion and the judgment of the court of common pleas is affirmed with costs. Exceptions may be entered.